UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | |
| v. | ) | USDC No. 22-cr-89 (APM) |
| Nancy Barron          *defendant*. | ) | |

UNOPPOSED MOTION TO MODIFY CONDITION OF RELEASE

Defendant, through undersigned counsel Nathan I. Silver, II, Esq. ("counsel"), appointed by this Court under the Criminal Justice Act, respectfully moves the Court, without opposition from the United States[1], to modify the condition of release that restricts her ability to possess a firearm during the pendency of this case. The reasons follow.

1. Defendant is charged in a four-count criminal information with misdemeanor offenses the government alleges she committed on January 6, 2021, at the United States Capitol. Those offenses are Entering and Remaining in a Restricted Building or Grounds; Disorderly and Disruptive Conduct in a Restricted Building or Grounds; Disorderly Conduct in a Capitol Building; and Parading, Demonstrating, or Picketing in a Capitol Buildings, violations of 18 U.S.C. §§ 1752(a)(1) and (a)(2), and 40 U.S.C. §§5104(e)(2)(D) and (e)(2)(G), respectively. 2. Defendant appeared on September 21, 2021, for her initial appearance in the instant case before Mag. Judge Zia M. Faruqui.[2] Judge Faruqui was charged with determining, under 18 U.S. §3142(c)(1)(B)[3], "the *least restrictive* further condition, or combination of conditions, that…will reasonably assure the appearance of the person as required and the safety of any other person and

---

[1] The defendant seeks the removal of the firearms restriction. The government does not oppose the defendant possessing a firearm in her residence but opposes possession outside the home.

[2] The defendant had a Rule 5 hearing on March 15, 2022, in the Southern District of Indiana) before appearing here.

[3] Pretrial Services recommended, and the government did not oppose, the defendant's release with conditions.

the community, which may include the condition that the person…(k)(viii) refrain from possessing a firearm, destructive device or other dangerous weapon…" (italics added)

3. The D.C. Pretrial Services Agency ("PSA" or "Pretrial") recommended "General Supervision," including that "The Defendant is not to possess a firearm, destructive device, or other weapon." (PSA report, page 1)  Judge Faruqui followed its recommendation.  The actual "Order Setting Conditions of Release" prohibits the defendant from possessing "a firearm, destructive device, or other weapon." (ECF Doc. 7, ¶7(k), page 2)[4]

4.  Defendant was also ordered to "submit to supervision by and report for supervision to the Southern District of Indiana (New Albany) ("SDIL") (as directed)...." (Id., ¶7(a)

5.  It is counsel's understanding that PSA recommends a firearms prohibition uniformly for defendants in January 6 cases, many of whom reside outside the D.C. metropolitan area.  They receive "courtesy supervision" by PSA (and in some cases U.S. Probation) officers in other districts.  The stated concern is that those officers who make home visits could be in peril by entering a residence where firearms are located.  There appears to be no other articulated purpose for this restriction.[5]

6. The defendant did not oppose the request for the restriction at her initial hearing on March 22, 2022,, nor at her subsequent arraignment before this Court a week later.  Since then, an event occurred which prompts her to request the lifting of the restriction with this motion: a

---

[4] The defendant had previously been ordered at the Rule 5 hearing in Indiana held on March. 15, 2021 not to possess firearms, ammunition or other destructive devices. (The Rule 5 documents have not been docketed in this case.). Defendant removed her firearm from her residence after her Rule 5 appearance in Indiana.

[5] This remains the position of D.C. Pretrial Services on this motion, conveyed to counsel by email from officers Katrina Stanford and Takeysha Robinson.  The basis for its opposition is unchanged–that the conduct by a pretrial services officer of a home visit–could expose the officer to danger, especially if the visit were not announced in advance.

problem with her former partner, the father of one of her five children, who has been subject to a protective (restraining) order issued by Switzerland Co., Indiana, the county of her residence, that prohibited him from contacting her and her children.[6]  Recently, the ex-partner drove three hours from his residence elsewhere in the state and entered the defendant's home.  The defendant, a single mother with five children, believes that while in her home the ex-partner abused his and the defendant's four year-old son, their only child together.  She reported this to the local authorities.  This episode, unresolved,  has made the defendant more fearful of her ex-partner, now that she has brought this matter to the attention of law enforcement.  The defendant also works from home–remotely assisting real estate agents remotely with lead generation–so she is more exposed than one who works outside the home..

6. The defendant is not a prohibited person under federal or state firearms law, and the instant charges–all misdemeanors–would not prevent her from purchasing or possessing a firearm, as would an open felony charge.  Her principal purpose in having a firearm is specific: to protect herself and her children from her ex-partner, apart from any generalized protection from criminal intrusions generally (e.g., stranger-on-stranger crime, such as an armed home invasion).[7]

7.  Defendant moves the Court to lift the restriction on her possession of firearms.  The Second Amendment to the Constitution, as interpreted by the U.S. Supreme Court in the case of *McDonald v. Chicago,* 561 U.S. 742 (2010), relying in part on *Heller v. District of Columbia,*

---

[6] That order recently expired. The defendant is seeking to renew the protective order.

[7] Indiana does not require registration of a firearm if its use is limited to one's residence.  To openly carry a firearm requires registration and a permit; a law set to go into effect on July 1, 2022, will eliminate the need for a separate concealed carry permit if one already has an open carry permit.  The defendant previously had a concealed carry permit issued by Ohio when she lived in that state.

554 U.S. 570 (2008), assures a private person's right to possess firearms in states and localities. That right may, of course, be subject to reasonable restrictions.

8. Defendant contends that the restriction here is neither reasonable in or justified by these circumstances. Defendant does not present any factors that would suggest she's a danger to others. She appears to have a modest criminal record involving a misdemeanor assault from 2003 and two motor vehicle infractions (operating while intoxicated, both from 2004). She is not a "prohibited person" under 18 U.S.C. §922(g) that would make her possession of firearms illegal. She is a veteran of the Armed Forces, having served in the U.S. Army National Guard for nearly six years, from December 2008 until September 2014, during which she received firearms training. There's no evidence before the Court of a history of drug or mental health problems, or currently with alcohol. The charges she faces are all *non*-violent misdemeanors. The allegations do not include either assaults against persons or the vandalizing or destruction of property. Last, she voluntarily surrendered to the FBI when she learned that there was a warrant for her arrest.

9. "The defendant must submit to supervision by and report for supervision to the Southern District of Indiana as directed…." The stated need for the firearms restriction is so a pretrial services officer supervising the defendant would not be in peril if making a home visit. (*Supra,* ¶5) The supervising officer has already made a home visit in this case, having done so about two days after the defendant was ordered released in this case. There is no reason for concluding on these facts that a firearms restriction is necessary. The defendant could be expected to secure the firearm before any supervisory visit.

10. Defendant adverts the Court to the cases *United States v. Tina Logsdon*, 22-cr-23-02 (TFH) and *United States v. Loruhamah Yazdani-Elsfehani,* 21-cr-543-03 (CRC), in which judges of this court, in similar, though not identical cases, have lifted the firearms restriction.[8]  In an important respect, the defendant has a greater need than the defendants in these two cases.  Mrs. Logsdon and Ms. Yazdani reside in rural areas, far from law enforcement, are frequently alone at night[9], with children in the residence.  Theirs is a common fear of intrusion, day or night, by a home invader.  In this case, the defendant has, like so many people, such a fear but also a particular, identifiable one: an ex-partner who might threaten her and her children because of the recent allegation she has brought against him.  Indeed, in the attached Exhibit 1, which consists of a screenshot of a text message exchange between the ex-partner and a third party.[10]

11. Defendant submits that a blanket application in the January 6 set of cases of the non-possession restriction violates a basic principle of our criminal justice system: to treat defendants, and their cases, individually.  Our system is not designed to, nor should it, treat defendants in bulk, much less as fungible, without further discrimination.  A restriction that infringes on a constitutional right should not be considered a "standard condition" of pretrial release, certainly not without an examination into both the need for the restriction and whether or not it is justified in the circumstances, taking into account the nature of the case along with the

---

[8] Counsel for defendant also represents Mrs. Logsdon and Ms. Yazdani in their cases and filed similar motions.

[9] Mrs. Logsdon's husband works a night shift, taking him away from the home; Ms. Yazdani's boyfriend is a municipal police officer who can be called away from the home even when his shift is otherwise over.

[10] The ex-partner states, "She's accusing me of being a child molester…I'm not going to be accused of any missbehavior (sic)  I'll kill her."  When the recipient calls him on it with "But that is not the answer I would not think," the ex-partner recants, "Definitely not going to kill lol." (Exhibit 1, redacted to remove reference to name or phone number.)  (This exhibit the defendant supplied to counsel on June 2, 2022, so it was not available to PSA when it formulated its position opposing the lifting of the restriction.) It is for this reason the defendant seeks a removal of the restriction so she may possess the firearm legally, whether at home or not, so long as she complies with Indiana law.

defendant's background.  It should also be noted that the defendant stands charged with these offenses but is presumed innocent unless and until proven guilty.

12. Defendant seeks only the lifting of the restriction on firearms.  She does not seek the lifting of the restriction on destructive devices or other weapons.

13. The defendant through counsel has conferred with the government regarding the issue presented in the Motion,  providing it with background information.  The government, via asst. U.S. Attorney Justin Woodard, attorney of record, does not oppose this Motion.

14.  To allay concerns of PSA, which is an arm of the Court, the Court could order Pretrial not to make unannounced home visits in this case.  Given that the defendant is charged with misdemeanors; has cooperated with law enforcement by turning herself in on this charge and submitting to a voluntary interview; has what may be considered relaxed (in terms of reporting) release conditions, and has *already* had a home visit by Pretrial, this would not be an onerous condition to require of a pretrial officer, nor one that would likely interfere with Pretrial's ability to do its job.[11]

14. For the reasons stated above, the defendant urges the Court to remove the restriction on the possession of firearms during the pendency of this case.

A proposed Order is attached.

WHEREFORE, the defendant respectfully moves the Court to grant said relief.

This pleading is,

Respectfully submitted,

---

[11] On reflection, it seems that a court officer who makes an unannounced visit to a defendant would be in no greater danger than any member of the public who find an unannounced visitor on one's doorstep–e.g., a canvasser for a political candidate or non-profit; proselytizers for Jehovah's witnesses; or one, in another time, Fuller Brush men or Avon Calling.

/s/

NATHAN I. SILVER, II
Unified Bar #944314
6300 Orchid Drive
Bethesda, MD 20817
(301) 229-0189 (direct)
(301) 229-3625 (fax)
email: nisquire@aol.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing pleading has been served via ECF on Justin Woodard, Esq., DOJ-Gulf Coast Fraud Section, attorney of record for the United States, this 6th day of June, 2022.

/s/
_____
*Nathan I. Silver, II*