UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 22-cr-089-ZMF |
| v. : | |
| : | |
| NANCY BARRON, : | |
| : | |
| Defendant. : | |

GOVERNMENT'S MOTION *IN LIMINE* REGARDING
VIDEO MONTAGE EVIDENCE

The United States of America moves for an order *in limine* to admit a video montage, without subscribing witness, relating to the January 6, 2021 riot at the United States Capitol, pursuant to Fed. R. Evid. 401, 402, 901, and 1006.

The government intends to introduce evidence through a U.S. Capitol Police Lieutenant familiar with the Capitol Police procedures leading up to January 6, 2021, including the security measures put in place and the video surveillance system underpinning that security. The lieutenant is also familiar with the approximately 1600 cameras present at the U.S. Capitol building and grounds. From the videos created by those cameras on January 6, 2021, the government has developed a comprehensive exhibit covering the events of the day.

As the certification proceeding at the Capitol began, a large crowd gathered outside the U.S. Capitol. Officers with the United States Capitol Police and the Metropolitan Police Department attempted to keep the crowd away from the building, but the crowd broke through several barriers on the West front just before 1:00 p.m. Another crowd gathered on the East Plaza of the building, encroaching on the area where the motorcade that brought then-Vice President Pence to the Capitol. Shortly before 2:00 p.m., the crowd on the East Front broke into the scaffolding, which was set up to construct the inauguration stage. At 2:13 p.m., individuals in the

crowd forced entry into the U.S. Capitol building itself on the West side near the Senate. In response to this intrusion, representatives, senators, and then-Vice President Pence evacuated their respective chambers around 2:20 p.m. For the next two hours, rioters flooded the building and the grounds, while police attempted to clear them out. The police finally cleared the Lower West Terrace of the Capitol at approximately 5:10 p.m.

The video montage intended to be introduced into evidence consists of videos taken from various Closed-Captioned Television (CCTV) cameras controlled by the U.S. Capitol Police.



*Figure 1*: Screengrab from Montage at 00:23.

It also includes satellite map depictions to orient the factfinder of the area of the U.S. Capitol and the general area with which the CCTV depictions are occurring.



*Figure 2*: Screengrab from montage exhibit at 00:37

The depictions include the events at both the West, and East Front of the Capitol, including a depiction of the defendant herself.



*Figure 3*: Screengrab from montage exhibit at 01:30. The defendant is circled in yellow.

3

The montage also includes audio. The audio derives from recorded "radio runs" from the U.S. Capitol Police communication system. As an example, during the depiction located within *Figure 1*, the factfinder will hear a radio transmission that says: "priority. We just had protesters at Peace Circle breach the line! We need back-up." The entirety of the proposed exhibit is attached as *Exhibit A*.

The exhibit is 15 minutes, 30 seconds in length, and represents an admissible overview of what occurred on January 6, 2021.

## ARGUMENT

Trial courts have inherent authority to manage the course of trials. *See generally* Fed. R. Evid. 103(d), and Fed. R. Crim. Pro. 12. "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the court of trials." *Luce v United States*, 469 U.S. 38, 41 n. 4 (1984). More directly, rulings about the admissibility of evidence pre-trial "may generally be the better practice, for it permits counsel to make the necessary strategic determinations." *United States v Jackson*, 627 F.2d 1198, 1209 (D.C. Cir 1980).

1. **Authenticity**

As a general matter, establishing an item's authenticity is not "a particularly high hurdle." *United States v. Ortiz*, 966 F.2d 707, 716 (1st Cir. 1992); *see also United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009) ("The burden to authenticate under Rule 901 is not high"); *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 927 (3d Cir. 1986) ("The burden of proof for authentication is slight."); *United States v. Hassanshahi*, 195 F. Supp. 3d 35, 48 (D.D.C. 2016) ("The threshold for the Court's determination of authenticity is not high, . . . and the proponent's burden of proof for authentication is slight[.]" (citation and quotation marks omitted)). Rule 901

"requires only a prima facie showing of genuineness and leaves it to the [finder of fact] to decide the true authenticity and probative value of the evidence." *United States v. Harvey*, 117 F.3d 1044, 1049 (7th Cir. 1997) (citing cases); *see also, e.g.*, *United States v. Belfast*, 611 F.3d 783, 819 (11th Cir. 2010) ("[A]uthentication itself is 'merely . . . the process of presenting sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be.'") (quoting *United States v. Caldwell*, 776 F.2d 989, 1002 (11th Cir. 1985)); *Vidacek*, 553 F.3d at 349 ("only a *prima facie* showing is required"). Stated differently, "[t]he standard the district court must apply in evaluating a document's authenticity is whether there is enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be." *United States v. Blanchard*, 867 F.3d 1, 6 (1st Cir. 2017) (quoting *United States v. Paulino*, 13 F.3d 20, 23 (1st Cir. 1994)). Once that showing is made, "[t]he factual determination of whether evidence is that which the proponent claims is ultimately reserved for the [finder of fact]." *Vidacek*, 553 F.3d at 349; *see also, e.g.*, *Belfast*, 611 F.3d at 819 ("Once that *prima facie* case is established, the evidence is admitted and the ultimate question of authenticity is decided by the jury.").

Under Fed. R. Evid. 901(4), "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances" can provide "evidence sufficient to support a finding that the item is what the proponent claims it is." *Id*. Here, the montage provides an overall view of the events that occurred around the U.S. Capitol, through the U.S. Capitol Police's own systems.

From the filming locations, and the timestamps on each depiction, provide distinct characteristics that exhibits these depictions are what the government claims it to be. Both the entirety of the video and the audio depicted within this montage has been provided to defense,

5

which forms the basis of these depictions in summary form. It is authentic footage that is not in meaningful dispute.

2. **Relevance**

In *United States v Carpenter*, Chief Judge James E. Boasberg reasoned, "general evidence of the events of January 6 is probative of several elements of the crimes with which [defendant] is charged." *Carpenter*, 2023 WL 1860978 at *3, (D.D.C. February 9, 2023) (which included the charges at issue in this case). Here, Barron is charged with four separate crimes, but each require the government the time with which the defendant choose to commit her crimes. It was during the chaos the U.S. Capitol Police were facing that the defendant choose to enter the restricted area and eventually the U.S. Capitol itself.

In count one, the defendant is charged with, "knowingly enter[ing] and remain[ing] in a restricted building and grounds . . . *without lawful authority* to do so." ECF No. 4 at 1 (emphasis added). The montage summarily depicts the events of the January 6, 2021, but importantly illustrates the entry of the defendant (alongside countless other individuals) moving past the lines the police were attempting to form in order to enter or remain with lawful authority to do so. This is especially important in the context of the defendant's conduct in this case, where not only did she enter a restricted area, but also knowingly remained, despite obvious signs indicating her lack of lawful authority.

In count two, the defendant is charged with, "engag[ing] in disorderly and disruptive conduct in and within such proximity to, a restricted building and grounds . . . and . . . such conduct did in fact impede and disrupt the orderly conduct of Government business and official functions." ECF No. 4 at 2. The defendant's conduct—as will be proven at trial—was disorderly or disruptive, and her conduct on top of the conduct of her fellow rioters *did in fact impede and disrupt the*

*orderly conduct of Government business and official functions*. This not only includes a single proceeding of the Congress, but the overall function of the U.S. Capitol and the law enforcement agencies protecting it.

In count four, the defendant is charged with, "willfully and knowingly parad[ing], demonstrat[ing], and picket[ing] in any United States Capitol Building." ECF No. 4 at 3. The defendant's conduct—as will be proved at trial—shows that she joined others to parade, demonstrate, or picket *inside* the Capitol. But the government must also be able to show the actions of the other individuals in order to meet its burden and contextualize the defendant's conduct viz a viz the mob itself.

Importantly, this exhibit helps appropriately consolidate an otherwise voluminous amount of information. Rather than seeking to introduce the entirety of relevant footage around the Capitol building and grounds, this video enables the government to introduce what would otherwise be a large, burdensome series of separately-admissible exhibits. In other words, under Fed. R. Evid. 1006, the video represents an appropriate "summary . . . to provide the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in Court."

As Chief Judge Boasberg noted: "the weighty probative value of evidence that broadly depicts what happened on January 6 outweighs any potential prejudice or cumulativeness. The Court as this point thus sees no reason to exclude it." *Carpenter*, at *4.

In *United States v Vargas-Santos*, No. 21-cr-47-RDM (D.D.C. ruling issued December 7, 2022), the defendant was charged with violating 18 U.S.C. §§ 1752(a)(1) and (a)(2); and 40 U.S.C. §§ 5104(e)(2)(D) and (G) in connection with his participation in the January 6 attack. Similarly to this case, in *Vargas-Santos*, the defendant had entered the Capitol Building from the East side. The

defendant in *Vargas-Santos*, the defendant objected to the use of the montage exhibit; however, after consideration, Judge Moss overruled the objection.

As the Court explained, to prove a violation of 18 U.S.C. § 1752(a)(2), "the Government does have the burden of proving that [the defendant] actually in fact disrupted government business on that day." Accordingly, "placing [the defendant's] actions in the context of everything else that was going on that day, and everything else that the Capitol Police were dealing with that day to try and maintain control of the Capitol" makes the compilation footage "not only relevant, but a significant aspect of the Government's case." Trial Tr. 7, *Untied States v. Vargas-Santos*, No. 21-cr-47-RDM (D.D.C. Dec. 7, 2022); *see also id.* at 9 ("THE COURT: So the theory is that he, along with others, were occupying the police on the other side of the building that couldn't be present to help their colleagues who were under attack? [PROSECUTOR]: Exactly right, Your Honor."). Judge Moss also observed that, while "particular portions" of the compilation might still be excluded if the defendant could show that they were "unduly inflammatory," the compilation video was "not particularly inflammatory given scenes that … happened in the Capitol that were a lot more violent and disturbing than what's in the video." *Id.* at 7-8.

Upon information and belief, the government has used this montage – in one way or another – in virtually every January 6 prosecution that has gone to trial since inception. While this alone does not guarantee its entry, it highlights the necessity and lack of controversy of such admission. As such, we seek its admission here.

## CONCLUSION

For these reasons, the United States requests that this Court enter an order, as described above, allowing for the admission of the fifteen-and-a-half-minute montage of the January 6, 2021 riot at the defendant's trial.

Respectfully Submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    /s/ *Adam M. Dreher*
ADAM M. DREHER
Assistant United States Attorney
Michigan Bar No. P79246
601 D. St. N.W.
Washington, D.C. 20530
(202) 252-1706
adam.dreher@usdoj.gov

VICTORIA A. SHEETS
Assistant United States Attorney
New York Bar No. 5548623
victoria.sheets@usdoj.gov