UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 22-cr-089-ZMF |
| v. : | |
| : | |
| NANCY BARRON, : | |
| : | |
| Defendant. : | |

**UNITED STATES' MOTION IN LIMINE TO
PRECLUDE ANY IMPROPER FIRST AMENDMENT DEFENSE**

The United States of America, by and through its attorney, moves this Court *in limine* to issue an order (1) precluding any argument, questioning, or evidence suggesting that the First Amendment permitted Barron to enter or remain in the restricted area at the U.S. Capitol on January 6; and (2) allowing the government to offer otherwise-protected speech (such as political speech) as evidence to show motive and intent to knowingly and willfully commit the crimes charged.

The defendant has already moved to dismiss the case based on First Amendment grounds (ECF No. 43). While those arguments should be rejected by this Court for the reasons to be stated in the government's forthcoming opposition to that motion, the government anticipates that the defendant may also attempt to interject inapplicable First Amendment issues into the trial itself, which is not only an impermissible defense to the alleged violations in this case but would also confuse and mislead the jury.

## BACKGROUND

The facts of this matter are summarized in the Statement of Facts (ECF No. 1), which the government incorporates by reference herein. As encapsulated in the Statement of Facts, the defendant is alleged to have entered the United States Capitol at 2:38 p.m., just minutes following the recess of the United States House of Representatives (the "House"). The defendant entered

through the East Front Columbus Doors, but even before entry into the building she moved past a line of bicycle racks, past several lines of United States Capitol Police officers, and pushed through a crowd of her fellow rioters. Outside the East Front Columbus Doors, the defendant saw officers being attacked, and rather than turn around to leave, she instead aided rioters fighting with police by pouring water into multiple rioters' eyes who were sprayed with OC spray by police in an attempt to hold the Capitol. Making clear her intent to enter the Capitol despite the police's orders, the defendant yelled, "Charge!," encouraging rioters who were fighting police officers at the front of the crowd until the doors fell to the violent mob and the rioters (including the defendant) gained entry into the Capitol. Once inside the Capitol, in a selfie-style video posted to Facebook, the defendant stated, with apparent jubilation, that she "made it in."

The defendant then moved throughout the Capitol, speaking to other rioters about the members of Congress. For example, she moved through the Rotunda stating, "where is fuckin' Pelosi . . ." and "is this Pelosi's stuff down here?" Eventually, the defendant made it to a hallway immediately outside the House Chamber and yelled, "fuck Nancy Pelosi and fuck Chuck Schumer! Got to drag those cocksuckers down!" Before leaving at 3:04pm, the defendant stopped to smoke a few cigarettes inside the Capitol, leaning against the East Rotunda doorway as she watched other rioters exiting the building. At all times when the defendant was inside of the Capitol, then-Vice President Mike Pence was also within that restricted area and it was closed to the public via barricades, locked doors, and lines of officers trying to keep rioters from breaching the Capitol.

## ARGUMENT

The First Amendment guarantees certain rights, but the right to illegally participate in a riot in our nation's Capitol is not one of them. None of the offenses with which the defendant is charged punish speech, as crimes such as threats or solicitation do. Instead, the crimes with which the defendant is charged focus on the defendant's conduct – namely: entering and remaining in a

2

restricted area (Count One); her disorderly and disruptive conduct in restricted areas and the Capitol building and grounds (Counts Two and Three); and her conduct parading, demonstrating, and picketing inside the United States Capitol Building (Count Four).

The defendant's assertions about any First Amendment protection for her conduct at the Capitol on January 6 run directly contrary to the evidence that the government has provided to the defendant in discovery. This includes Capitol security footage and videos personally recorded by the defendant which show her entering a restricted area, passing through barricades and multiple lines of officers, encouraging rioters to face off with police and "charge" the East Rotunda doors, entering the Capitol itself, and personally aiding rioters who had been sprayed by officers during the officers' attempt to hold the Capitol on the East front. None of this conduct is sanctioned by the First Amendment. Therefore, to avoid confusing the issues or misleading the jury, the Court should (1) preclude the defendant from arguing that her conduct on January 6 was protected by the First Amendment and (2) permit the government to use otherwise-protected speech (such as political speech) as evidence in this trial where appropriate to prove necessary intent.

I. **This Court should preclude the defendant from arguing that her conduct was protected by the First Amendment.**

> "No matter Defendants political motivations or any political message they wished to express, this alleged conduct is simply not protected by the First Amendment. Defendants are not, as they argue, charged with anything like burning flags, wearing black armbands, or participating in mere sit-ins or protests." *United States v. Nordean*, No. 21-175 (TJK) (D.D.C., Dec. 28, 2021), ECF No. 263, pg. 29.

If the government establishes the elements of any of the offenses with which the defendant is charged, the First Amendment provides her no defense, even if evidence of the defendant's crimes are intertwined with political discussion and/or rhetoric. *See United States v. Amawi*, 695 F.3d 457, 482 (6th Cir. 2012) ("[A]lthough the conspiracy was closely related to, and indeed proved by, many of the defendants' conversations about political and religious matters, the

3

conviction was based on an agreement to cooperate in the commission a crime, not simply to talk about it"); *see also United States v. Hassan*, 742 F.3d 104, 127-28 (4th Cir. 2014) (citing *Amawi*).

Accordingly, any line of cross-examination or argument that the defendant may wish to make regarding the First Amendment is irrelevant under Fed. R. Evid. 401 because it lacks a "tendency to make the existence of [a] fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" and because she is not entitled to a First Amendment defense as a matter of law. To the extent there is any relevance to any of the defendant's First Amendment claims, the Court should exclude any questioning and argument along those lines under Fed. R. Evid. 403. Any attempt to shift the jury's attention to questions about whether the defendants' statements were protected by the First Amendment, rather than the charged offenses risks confusing the issues, wasting time, and misleading or even unfairly prejudicing the jury.

Because the Capitol building and grounds were restricted on January 6, 2021, the First Amendment does not apply as a defense. This is a principle applied in numerous January 6 criminal trials thus far, in which other courts in this District have explicitly rejected the First Amendment as a defense.

   A. <u>The Capitol building and grounds where the defendant's conduct occurred were restricted on January 6, 2021, making the First Amendment inapplicable.</u>

There is no First Amendment right to protest in a restricted area. The government can—and did on January 6—restrict an area that is a for legitimate government ends. At least three courts in this district, when faced with First Amendment challenges to regulation of activity in the Capitol Buildings, have concluded that they are nonpublic forums. *See Bynum v. U.S. Capitol Police Bd.*, 93 F. Supp. 2d 50, 56 (D.D.C. 2000); *United States v. Nassif*, No. 21-cr-421 (JDB), 2022 U.S. Dist. LEXIS 164181, 2022 WL 4130841, at *2 (D.D.C. Sept. 12, 2022); *United States v. Munchel*,

No. 1:21-CR-118 (RCL), 2023 U.S. Dist. LEXIS 671, 2023 WL 2992689 (D.D.C. Apr. 18, 2023). *See also United States v. Bender*, No.: 21-CR-508 (BAH), Minute Entry Nov. 22, 2022 ("As the government notes, defendants fail to point to a single example of prosecutions under the Section 5104(e)(2)(G) for First Amendment-protected speech").

Other courts unsurprisingly have similarly upheld temporary closures of traditional public fora for safety reasons. *See Mahoney v. U.S. Marshals Service*, 454 F. Supp. 2d 21, 32-33 (D.D.C. 2006) (U.S. Marshals Service did not violate First Amendment by restricting access to sidewalk in front of St. Matthew's Cathedral for Red Mass, even though sidewalk was a traditional public forum); *Menotti v. City of Seattle*, 409 F.3d 1113, 1129-30 (9th Cir. 2005) (finding that an emergency order closing a core area of downtown Seattle to protests during World Trade Organization conference was constitutional in part because its purpose was to maintain and restore civic order); *Marcavage v. City of New York*, 489 F.3d 98, 105 (2d Cir. 2012) ("[T]here can be no doubting the substantial government interest in the maintenance of security at political conventions"); *Citizens for Peace in Space v. City of Colorado Springs*, 477 F.3d 1212, 1222 (10th Cir. 2007) ("In this case, there can be no doubt that the City's interest in providing security to a gathering of defense officials is of the highest order"); *Bl(a)ck Tea Soc'y v. City of Boston*, 378 F.3d 8, 11 (1st Cir. 2004) (upholding a street-closure plan around the Democratic National Convention that made it nearly impossible for groups wishing to demonstrate to do so within sight and sound of the delegates).

On January 6, 2021, the United States Capitol Police and the United States Secret Service coordinated to establish a restricted perimeter around the Capitol building that encompassed a portion of the Capitol grounds. No member of the public, including the defendant, had a First Amendment right to engage in protest or speech within that restricted area. Therefore, the Court should enter an order precluding the defendant from eliciting testimony to the contrary, as well as

precluding defense counsel from arguing to the contrary or stating during voir dire, questioning, or opening or closing statements that the defendant was merely engaged in protected speech or pursuing their "right" to protest at any point when they were on U.S. Capitol grounds, absent additional proffer.

The Capitol building is "a nonpublic forum where the government may limit First Amendment activities so long as the restrictions 'are reasonable in light of the purpose of the forum and are viewpoint neutral.'" *United States v. Nassif*, No. 21-421 (JDB, Sept. 12, 2022), 2022 U.S. Dist. LEXIS 164181, 2022 WL 4130841, at *4 (*quoting Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806, 105 S. Ct. 3439, 87 L. Ed. 2d 567 (1985)). Like an office building, "the inside of the Capitol is not open to meetings by the public at large," and its most important spaces, including the Senate and House galleries, floors, and committee hearing rooms, are designed to facilitate "the orderly and formal presentation of testimony in the form of debate and discussion by elected officials and authorized witnesses." *Bynum v. U.S. Capitol Police Bd.*, 93 F. Supp. 2d 50, 56 (D.D.C. 2000). The purpose of the forum is to "permit[] 'Congress peaceably to carry out its lawmaking responsibilities' and allow 'citizens to bring their concerns to their legislators.'" *Nassif*, 2022 U.S. Dist. LEXIS 164181, 2022 WL 4130841, at *5 (*quoting Bynum*, 93 F. Supp. 2d at 55). In light of that purpose, the proscription in § 5104(e)(2)(G) is reasonable, as it prevents actions "that Congress reasonably could have concluded would disrupt its legislative process." *Id*. Finally, the statute is viewpoint neutral: it "contains nothing limiting its application to a particular viewpoint." *Id*. Given that the statute permissibly targets conduct in a nonpublic forum, it does not restrict a substantial amount of protected speech and is not unconstitutionally overbroad. *United States v. Sheppard*, 2022 U.S. Dist. LEXIS 232610 (DDC).

B. Other Courts have rejected First Amendment defense claims in the January 6 context.

Numerous other courts in this District have already rejected First Amendment defense

6

claims in cases stemming from the events of January 6, 2021. *See United States v. Sheppard*, No. 21-203 (JDB, Jan. 6, 2023) ECF No. 66, *United States v. Alberts*, Case No. 21-cr-026 (CRC), *United States v. Nordean*, No. 21-CR-175 (TJK), *United States v. Carpenter*, No. 21-cr-305 (JEB).

In *United States v. Sheppard*, No. 21-203 (JDB), the government filed a *motion in limine* to preclude the defendant from suggesting that his speech or conduct was protected by the First Amendment. (ECF No. 60.) In response, the defendant argued that, "while Mr. Sheppard may not necessarily argue his statements were protected by the First Amendment, he may argue that he did not have criminal intent to obstruct the official proceeding because his intent was to speak in accordance with his First Amendment rights . . ." (ECF No. 61, pg. 4.) In granting the government's motion, the Court ruled:

> The Court will also grant the government's second request. But Sheppard is not necessarily barred from mentioning the First Amendment at all. The only restriction the Court will impose at this time is that he cannot argue that the First Amendment is a defense to any of the charges against him. He appears to concede that line of argument would be impermissible. *See* Sheppard Resp. at 4 (noting that he "may not necessarily argue his statements were protected by the First Amendment"). The other ways Sheppard suggests the First Amendment might be relevant, *see id*. at 4–5, appear to be outside the scope of the government's motion and the Court will not rule on evidence's admissibility for those purposes here.

*Sheppard*, No. 21-203 (JDB), ECF No. 66, pg. 10. The defense thereafter did not propose a First Amendment Jury Instruction. *See Sheppard*, No. 21-203 (JDB), ECF No. 69, Defense Proposed Jury Instructions. The First Amendment was barely discussed, or argued, during trial. The Court's ruling in *Sheppard* therefore prevented significant discussion of the First Amendment.

Similarly, a First Amendment instruction was denied in *United States v. Alberts*, Case No. 21-cr-026 (CRC). There, the defendant—in fact, this very opposing counsel—filed a proposed First Amendment jury instruction as follows:

**Proposed Instruction No. __**
**First Amendment Rights**

7

> Every person has the right to petition his or her government, and express ideas and bring their concerns to their legislators. Citizens also have the right to peaceably assemble with others to petition their government. And under the First Amendment, a person has a constitutional right to make violent or antigovernment statements and threats and may call upon others to act violently, except in rare circumstances where the speaker knows such violent threats have an immediate likelihood of getting others to immediately carry out such violence and reasonably knows that others have the ability and are likely to carry out such threats.
>
> These First Amendment rights apply to every count in the indictment. You may not use the defendant's protected speech, petitioning, advocacy or expression as support for the government's allegations. If you find that the defendant's conduct was First Amendment protected speech, expression, or advocacy, you must find the defendant not guilty.
>
> The United States Capitol is one of America's largest public buildings. It is the headquarters of the Legislative Branch of government, where the American people have broad rights to petition, advocate, protest, and meet with members of Congress and staff in order to promote or prevent the advancement of legislation or other congressional acts.

*United States v. Alberts*, Case No. 21-cr-026 (CRC), ECF No. 130. In response to the filed proposed instructions, the Court held:

> THE COURT: All right. And, Mr. Roots, you did file proposed First Amendment and Second Amendment instructions. The Court will not give those.
>
> With respect to the First Amendment, the defendant is not being charged with a speech. He's being charged with specific conduct. None of the statutes that he has been charged under have been held to violate First Amendment; and, moreover, the government can place reasonable time, place, and manner restrictions on First Amendment activity.

Transcript of trial, *United States v. Alberts*, Case No. 21-cr-026 (CRC), Apr. 18, 2023, pg. 1116-7.

In *United States v. Nordean*, No. 21-CR-175 (TJK), the government similarly filed a *motion in limine* to preclude the defendant from suggesting that his speech or conduct was protected by the First Amendment. ECF No. 494, pg. 26. In discussing the motion in a pre-trial conference, the Court stated:

> Again, obviously, I think both parties sort of acknowledged that there isn't, for

8

> example, a First Amendment defense to running up into the Capitol past all the -- past all the barriers, and I don't think the defendants are purporting to offer that as a defense to that conduct.

Transcript of pre-trial conference, *United States v. Nordean*, No. 21-CR-175 (TJK), Nov. 18, 2022, pg. 48. In rejecting the defendants' prior motion to dismiss the indictment, the Court ruled:

> No matter Defendants political motivations or any political message they wished to express, this alleged conduct is simply not protected by the First Amendment. Defendants are not, as they argue, charged with anything like burning flags, wearing black armbands, or participating in mere sit-ins or protests.

*United States v. Nordean*, No. 21-175 (TJK) (D.D.C., Dec. 28, 2021), ECF No. 263, pg. 29.

In *United States v. Carpenter,* CR. NO. 21-cr-305 (JEB), the government filed a motion in limine to "preclude the defendant from arguing to the jury that her conduct was protected by the First Amendment." (ECF No. 94.) In addressing the government's motion, the Court stated:

> THE COURT: I mean, we can talk about this more before closing. So far, I inferred that Ms. Gelernt was arguing that, not as a defense, but as an explanation for why she didn't have the intent to obstruct, but she had the intent to go speak and protest. And I think that's legit. It's not a legal defense, but it's legitimate to say this is what her intent was or wasn't. So I don't think that that's -- at this point, and we will talk about it before closing, but at this point I don't think she has argued anything improper.

Transcript of trial, *United States v. Carpenter,* CR. NO. 21-cr-305 (JEB), Mar. 7, 2023, pg. 5. No First Amendment defense instruction was given. *See* ECF No. 97.

For these reasons, this Court, consistent with the holdings on this issue by other courts in this District, should preclude the defendant from arguing or offering any evidence that the defendant's conduct was legally defensible because she had a First Amendment right to commit any of the actions she took on January 6, 2021 in a restricted area, including the Capitol building or grounds, for which the government is now seeking to hold her accountable.

## II.   Nonetheless, the government should be permitted to introduce the defendant's statements as evidence of her motive and intent.

9

While the First Amendment does not sanction the defendant's conduct in this case, the defendant's statements, for use at trial, are nevertheless fair game, as evidence of intent and motive. In this respect, the defendant is being prosecuted for the conduct that she took in furtherance of her speech, not for the speech itself. *United States v. Chansley*, 525 F. Supp 3d 151, 164 (D.D.C. 2021) (Lamberth, J.) ("[E]ven if [defendant's statements were themselves protected, the First Amendment does not prohibit their consideration as evidence of motive or intent.").

It is uncontroversial that a defendant's statements, which would otherwise be protected under the First Amendment, may be introduced in a criminal case when those statements are evidence of the intent behind a defendant's acts. *See Wisconsin v. Mitchell*, 508 U.S. 476 (1993). "Evidence of a defendant's previous declarations or statements is commonly admitted in criminal trial subject to evidentiary rules dealing with relevancy, reliability, and the like." *Id*. at 489. Courts across the country have followed the mandate in *Mitchell* and admitted evidence for this purpose. *United States v. Smith*, 967 F.3d 1196, 1205 (11th Cir. 2020) (admitting musical lyrics composed by a defendant in a Hobbs Act prosecution); *United States v. Pierce*, 785 F.3d 832 (2d Cir. 2015) ("The speech was not the basis for the prosecution, but instead it was used to establish the existence of, and [defendant's] participation in, the alleged RICO enterprise[.]" (internal citations omitted); *United States v. Salameh*, 152 F.3d 188, 111-112 (2d Cir. 1998) (the defendants were not "prosecuted for possessing or reading terrorist materials. The materials seized […] were used appropriately to prove the existence of the bombing conspiracy and its motive.").

This same principle has been upheld and applied in the context of cases arising from the Capitol Riot. *Chansley*, 525 F. Supp 3d at 164; *United States v. Robertson*, 2022 WL 969546 at *6 (D.D.C. 2022) (Cooper, J.) ("If Robertson had expressed his views only through social media, he almost certainly would not be here. But he also allegedly took action—entering the Capitol

without lawful authority in an alleged attempt to impede the Electoral College vote certification. His words remain relevant to his intent and motive for taking those alleged actions.").

Here, the defendant's speech is relevant and highly probative evidence of the intent behind her actions. *Id*. For instance, the defendant's yelling, "Charge!," as she witnessed rioters physically fighting with police officers outside the East Rotunda doors is relevant and admissible evidence that she acted with knowledge in entering a restricted area—the Capitol building which was being actively guarded by officers. Her statements are thus appropriate sources of evidence at trial.

## CONCLUSION

For the foregoing reasons, the Court should (1) preclude the defendant from arguing that the First Amendment is a legal defense to the charges in this case, and (2) permit the government to admit Barron's statements that are evidence of her motive and intent to commit the charged offenses.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     /s/ Victoria A. Sheets
VICTORIA A. SHEETS
Assistant United States Attorney
NY Bar No. 5548623
601 D Street, N.W.
Washington, D.C. 20001
(202) 252-7566
victoria.sheets@usdoj.gov

ADAM M. DREHER
Assistant United States Attorney
Michigan Bar No. P79246
601 D. St. N.W.
Washington, D.C. 20530
(202) 252-1706
adam.dreher@usdoj.gov