UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 22-cr-089 (ZMF) |
| | : | |
| NANCY BARRON, | : | |
| | : | |
| Defendant. | : | |

GOVERNMENT'S OPPOSITION TO DEFENDANT BARRON'S
MOTION TO DISMISS ON FIRST AMENDMENT GROUNDS,
AND FOR FAILURE TO STATE A CLAIM

The United States of America respectfully submits this opposition to Nancy Barron's motion to dismiss all counts of the Information. ECF No. 43. Barron (hereinafter "Barron" or "the defendant") seeks to contest facts in her motion to dismiss, which is inappropriate for a pretrial motion under Rule 12(b)(3), claiming, as Barron appears to do here, the failure to state an offense. Barron's claims are not new; motions similar—if not identical—to the one filed here have been rejected by other judges in this district. *See United States v. Baez,* ---F. Supp. 3d ---, 2023 U.S. Dist. LEXIS 98766 (D.D.C. June 2, 2023)*; United States v. Gray,* --- F. Supp. 3d ---, 2023 U.S. Dist. 2023 LEXIS 70431 (D.D.C. January 26, 2023)*.* Her claims remain meritless here and this Court should deny them.

I.  FACTUAL BACKGROUND AND PROCEDURAL POSTURE

A.  Events of January 6, 2021

On January 6, 2021, thousands of rioters took part in an attack on the U.S. Capitol in an effort to stop the certification of the results of the 2020 presidential election. These rioters forced their way into the U.S. Capitol building, requiring elected officials and their staff to flee or shelter in place and injuring many law enforcement officers.

As summarized in part in the Statement of Facts accompanying the defendant's criminal complaint, the defendant is alleged to have entered the United States Capitol at 2:38 p.m., *see* ECF 1-1 at 4, within minutes of the evacuation of Members from the House Chamber. The defendant entered through the East Rotunda Doors, but even before then she moved past a line of bicycle racks, past several lines of officers, and pushed through a crowd of her fellow rioters. Once inside the Capitol, in a selfie-style video posted to Facebook, the defendant stated, with apparent jubilation, that she "made it in."

The defendant moved throughout the Capitol, speaking to others about members of Congress. For example, she moved through the Rotunda occasionally stating, "where is fuckin' Pelosi . . ." and "is this Pelosi's stuff down here?" Eventually, the defendant made it to a hallway immediately outside the House Chamber and yelled, "fuck Nancy Pelosi and fuck Chuck Schumer! Got to drag those cocksuckers down!" At all times when the defendant was inside of the Capitol, then-Vice President Mike Pence was also within that restricted area.

For her participation in the riot, Barron was charged by criminal complaint on March 11, 2022. Within the criminal complaint—with an attached statement of facts—it is alleged the defendant violated 18 U.S.C. § 1752(a)(1), 18 U.S.C. § 1752(a)(2), 40 U.S.C. § 5104(e)(2)(D), and 40 U.S.C. § 5104(e)(2)(G). An information alleging violations of the same statutes was filed on March 17, 2022. ECF 4. A trial was set for June 5, 2023. ECF 42.

Barron requested to have a magistrate judge conduct her trial. ECF 35 at 2. On May 4, 2023, The Honorable Amit P. Mehta granted that request. May 4, 2023 Minute Order. This Court then scheduled a jury trial for August 22, 2023. ECF 42. Barron filed her motion to dismiss on July 23, 2023. ECF 43.

## II.    LEGAL STANDARD

### A. Failure to State an Offense

A defendant may move before trial to dismiss an information or indictment, or a count thereof, for "failure to state an offense." *See* Fed. R. Crim. P. 12(b)(3)(B)(v). The main purpose of a charging document, such as an information or indictment, is to inform the defendant of the nature of the accusation. *See United States v. Ballestas*, 795 F.3d 138, 148–149 (D.C. Cir. 2015) (discussing purpose of an indictment). Thus, an indictment need only contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).

A charging document is sufficient under the Constitution and Federal Rule of Criminal Procedure 7 if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," *Hamling v. United States*, 418 U.S. 87, 117 (1974), which may be accomplished by "echo[ing] the operative statutory text while also specifying the time and place of the offense," *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018). "[T]he validity of an indictment 'is not a question of whether it could have been more definite and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)). And a charging document need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed." *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976).

When assessing the sufficiency of criminal charges before trial, an indictment "must be viewed as a whole and the allegations [therein] must be accepted as true." *United States v. Bowdoin*, 770 F. Supp. 2d 142, 145 (D.D.C. 2011)). The "key question" is whether the allegations

"if proven, are sufficient to permit a petit jury to conclude that the defendant committed the criminal offense as charged." *Id.*

There are two ways in which an information may fail to state an offense. First, "if the charged statutory provision is unconstitutional," and second, "if the offense charged does not apply to the defendant's conduct." *United States v. Nassif*, 628 F. Supp. 3d 169, 177 (D.D.C. 2022) (citations omitted); however, in the context of a pretrial motion to dismiss, "the sole question before the court is the legal sufficiency of the information." *Id*. (cleaned up).

### B. First Amendment Challenge

"To prevail on an as-applied First Amendment challenge," a defendant "must demonstrate that the statute is unconstitutional as applied to his particular expressive activity." *United States v. Caputo*, 201 F. Supp. 3d 65, 71 (D.D.C. 2016). The Court must "first assess whether [the defendant's] conduct is, in fact, expressive, and then determine whether the challenged statute 'is related to the suppression of free expression.'" *Id.* (*citing Texas v. Johnson*, 491 U.S. 397, 403, (1989)). If the statute is not related to expression, then the less stringent standard the Supreme Court announced in *United States v. O'Brien*, 391 U.S. 367, 377 (1968)), for regulation of noncommunicative conduct controls. *Caputo*, 201 F. Supp. 3d, at 71.

That test has four prongs: first, the challenged regulation must be "within the constitutional power of government"; second, it must "further[ ] an important or substantial government interest"; third, this interest must be "unrelated to the suppression of free expression"; and fourth, the incidental restriction on First Amendment freedoms must be "no greater than is essential to the furtherance of that interest." *Id.* (*citing O'Brien*, 391 U.S., at 377).

### III.   ARGUMENT

#### A.  The Information Adequately States an Offense for All Counts

Barron's motion fails on the merits because the Information adequately states an offense in every count. Count One of the Information alleges that, in violation of 18 U.S.C. § 1752(a)(1):

> On or about January 6, 2021, in the District of Columbia, NANCY BARRON, did knowingly enter and remain in a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President was and would be temporarily visiting, without lawful authority to do so.

ECF No. 4 at 1.

The elements of Count One are:

1)   The defendant entered or remained in a restricted building or grounds without lawful authority to do so.

2)   The defendant did so knowingly.

*See United States v. Jabr*, 4 F.4th 97, 101 (D.C. Cir. 2021); *United States v. Eicher*, 22-cr-38 (BAH) (ECF 82 at 6).

Count Two of the Information alleges that, in violation of 18 U.S.C. § 1752(a)(2):

> On or about January 6, 2021, in the District of Columbia, NANCY BARRON, did knowingly, and with intent to impede and disrupt the orderly conduct of Government business and official functions, engage in disorderly and disruptive conduct in and within such proximity to, a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President was and would be temporarily visiting, when and so that such conduct did in fact impede and disrupt the orderly conduct of Government business and official functions.

ECF No. 4 at 2.

The elements of Count Two are:

1)   The defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds;

2)   The defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions;

    3)    The defendant's conduct occurred when, or so that, her conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

*See Eicher*, 22-cr-38 (BAH) (ECF 82 at 6-7).

Count Three of the Information alleges that, in violation of 40 U.S.C. § 5104(e)(2)(D):

> On or about January 6, 2021, in the District of Columbia, NANCY BARRON, willfully and knowingly engaged in disorderly and disruptive conduct within the United States Capitol Grounds and in any of the Capitol Buildings with the intent to impede, disrupt, and disturb the orderly conduct of a session of Congress and either House of Congress, and the orderly conduct in that building of a hearing before or any deliberation of, a committee of Congress or either House of Congress.

ECF No. 4 at 2.

The elements of Count Three are:

    1)    The defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings or Grounds;

    2)    The defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress;

    3)    The defendant acted willfully and knowingly.

*United States v. Barnett*, 21-cr-38 (CRC) (ECF No. 158 at 22); *United States v. Jenkins*, No. 21-cr-245 (APM) (ECF No. 78 at 31); *United States v. Jensen*, No. 21-cr-6 (TJK) (ECF No. 97 at 40); *United States v. Williams*, 21-cr-618 (ABJ) (ECF 122 at 40).

Count Four of the Superseding Information alleged that, in violation of 40 U.S.C. § 5104(e)(2)(G):

> On or about January 6, 2021, in the District of Columbia, NANCY BARRON, willfully and knowingly paraded, demonstrated, and picketed in any United States Capitol Building.

ECF No. 4 at 3.

The elements of Count Four are:

1) The defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings.

2) Second, the defendant acted willfully and knowingly.

*United States v. Barnett*, 21-cr-38 (CRC) (ECF No. 158 at 23); *United States v. Jensen*, No. 21-cr-6 (TJK) (ECF No. 97 at 42); *United States v. Williams*, 21-cr-618 (ABJ) (ECF 122 at 40).

The Information therefore includes the elements of the offense for all four offenses. The Counts of the Information "echo[ ] the operative statutory text while also specifying the time and place of the offense," *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018). Counts One, Two, Three, and Four "fairly inform" Barron of the charges against which she must defend, and that the charges stem from her conduct on January 6, 2021, in the District of Columbia. *Hamling*, 418 U.S., at 117. "No more is required." *Nassif*, 628 F. Supp. 3d at 185

Criminal cases have no mechanism equivalent to the civil rule for summary judgment. *United States v. Bailey*, 444 U.S. 394, 413, n.9 (1980) (motions for summary judgment are creatures of civil, not criminal trials); *United States v. Yakou*, 428 F.3d 241, 246-47 (D.C. Cir. 2005) ("There is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context"); *United States v. Oseguera Gonzalez*, 20-cr-40-BAH, 2020 U.S. Dist. LEXIS 201479, at *5 (D.D.C. 2020) (collecting cases explaining that there is no summary judgment procedure in criminal cases or one that permits pretrial determination of the sufficiency of the evidence). Accordingly, dismissal of a charge does not depend on forecasts of what the government can prove. Instead, a criminal defendant may move for dismissal based on a defect in the information or indictment, such as a failure to state an offense. *United States v. Knowles*, 197 F. Supp. 3d 143, 148 (D.D.C. 2016). Whether an information fails to state an offense because an essential element is absent calls for a legal determination. In Barron's introduction and conclusion

of the motion to dismiss, she makes the bare assertion that the government has failed to state a claim; however, the defendant does not describe a legal standard, provide analysis, or present arguments that any count in the Information omits a necessary element.

As Judge Friedman determined that when ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and more specifically, the language used to charge the crimes. *United States v. Puma*, 596 F. Supp. 3d 90 (D.D.C. 2022) (quoting *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009)). That approach is the correct one here. *See also United States v. McHugh*, 583 F. Supp. 3d 1 (D.D.C. 2022) (to resolve a motion to dismiss, the court addresses only the legal sufficiency of the indictment and does not review the sufficiency of the evidence against the defendant or craft jury instructions). Since each count charged in this case alleges the time and place of the offense and echoes the language of the relevant statute, the charges in the Information are sufficient, and the defendant's claims must fail.

Consistently with the requirement to limit review of a motion to dismiss to the language of the charging document, Barron cannot seek dismissal based on facts outside of those alleged in the Information. Nevertheless, she attempts to equate the statement of facts supporting the criminal complaint, ECF No. 1-1, as the measure against which the Information must be judged. That approach is incorrect.

Unlike an information, a complaint is not the final charging document. After the filing of a complaint, the prosecution may continue to investigate and refine or alter its charging decisions. Thus, a complaint is not equivalent to a "full proffer" of the government's evidence. *See Yakou*, 428 F.3d at 246-47.[1] Indeed, "[i]f contested facts surrounding the commission of the offense would

---

[1] "It is usually improper to force the Government to proffer its evidence pretrial so that the defense might test its sufficiency. That could, for instance, curtail the Government's ability to obtain

be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.).

The factual disputes to be resolved are resolved at trial, and the disputes alone are inappropriate bases to seek dismissal of the Information. *See United States v. Hillie*, 227 F. Supp. 3d 57, 71 (D.D.C. 2017) (Ketanji Brown Jackson, J.) ("When testing the sufficiency of the charges in an indictment … the allegations therein must be accepted as true.") (cleaned up). The defense offers no legal support for the claim that a court may look to a complaint to assess the validity of an information, or for the proposition that any component of a criminal complaint equals a full proffer from the government. This Court should therefore reject the attempt to treat the complaint as a sufficient source of information for addressing the motion to dismiss under Rule 12.

### B. Barron's Prosecution Does Not Violate the First Amendment

In effect, although she fails to properly articulate her claim, Barron implies that the statutes charged are overbroad because, according to her, they somehow seek to punish expression protected under the First Amendment. Indeed, the arguments Barron has raised in this case have been raised in other January 6 cases, where judges have treated the motion as one that makes a First Amendment overbreadth or vagueness challenge. *See, e.g., Baez,* (noting that the motion fails to articulate whether that defendant's First Amendment objection to Section 1752(a) was facial or as applied to her case); *Gray* (noting that the defendant's First Amendment challenge to Section 5104(e)(2)(D) appeared to argue that the statute was facially invalid and as applied to his

---

additional evidence or locate new witnesses." *United States v. Hitelsberger*, 991 F. Supp. 2d 108, 125 (D.D.C. 2014) (cleaned up).

conduct). In each case, the arguments raised here have been properly rejected. This Court should do the same.

When assessing restrictions that the government seeks to place on the use of its own property, the Supreme Court has been consistent in holding that "the First Amendment does not guarantee access to property simply because it is owned or controlled by the government." *United States Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 129 (1981). First, one must establish if the government property in question is a public forum—one that "has traditionally been available for public expression"; or a designated public forum—one that the government "has opened for expressive activity by part or all of the public." *Int'l Soc'y for Krishna Consciousness v. Lee*, 505 U.S. 672, 678 (1992). Restrictions on both public and limited public forums are scrutinized using strict scrutiny. *Id.* By contrast, a nonpublic forum is "a space that is not by tradition or designation a forum for public communication." *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1885 (2018). For nonpublic forums, restrictions must simply be "reasonable" and "not an effort to suppress expression." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983). Examples of nonpublic forums include airport terminals, *Int'l Soc'y for Krishna Consciousness*, 505 U.S. at 683; polling places on election day, *Minn. Voters All.*, 138 S. Ct. at 1886; and—notably for this analysis—the inside of the U.S. Capitol. *Bynum v. United States Capitol Police Bd.*, 93 F. Supp. 2d 50, 56 (D.D.C. 2000) (Friedman, J.); see also *United States v. Munchel*, --- F. Supp. 3d ---, 2023 U.S. Dist. LEXIS 67141, at *20 (D.D.C. 2023); *Nassif*, 628 F. Supp. 3d 169 (D.D.C. 2022); *United States v. Rhine*, --- F. Supp. 3d ---, 2023 U.S. Dist. LEXIS

12308, at *43-44 (D.D.C. 2023); *United States v. Gray*, --- F. Supp. 3d --, 2023 U.S. Dist. 2023 LEXIS 70431, at *26-27 (D.D.C. 2023).[2]

Barron advances the blanket assertion that any violation of 18 U.S.C. §§ 1752(a)(1), 1752(a)(2), and 40 U.S.C. §§ 5104(e)(2)(D), 5104(e)(2)(G) charged in the Information constitutes an impermissible restriction on speech in a public place. ECF No. 43. Barron cites a hodgepodge of case law but does little to frame the legal issue or advance her claims. She does not identify whether the challenge is facial or as applied. She does not make a claim as to whether the statute as written is content based or content neutral. She does not ask this Court to apply either strict scrutiny or the reasonableness standard. Barron simply asserts that her conduct "[was] part of a protest movement whose aim was to keep our elections honest, and to express themselves and their political positions against the election improprieties which are well document." ECF No. 43 at 3. No precedent supports this broad claim.

Barron does not characterize what, if any role, she played on January 6, but one can infer from her arguments that she contends that she was not an active participant in the riot. Even if the Court were to reach that question, her claim still fails.

### i. Barron's Offense Conduct Did Not Involve Constitutionally Protected Expression

To start, Barron's alleged offense conduct is simply not protected by the First Amendment.

Two charges carry specific-intent elements. Under 18 U.S.C. § 1752(a)(2), the government must show that Barron acted "with intent to impede or disrupt the orderly conduct of Government

---

[2] Even if this Court were to engage in a fact dependent First Amendment analysis of Barron's conduct on January 6, the statutes under which Barron is charged are constitutional, as further detailed below.

business or official functions." Similarly, under 40 U.S.C. § 5104(e)(2)(D), the government must show that Barron acted with "the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress." As Judge Kelly has previously observed, conduct done with the "inten[t] to obstruct Congress's performance of its constitutional duties … is simply not protected by the First Amendment." *Nordean*, 579 F. Supp. 3d, at 41 (D.D.C. 2021); *see also Baez*, 2023 U.S. Dist. LEXIS 98766, at *9-22 (denying motion to dismiss and upholding 18 U.S.C. §§ 1752(a)(1), 1752(a)(2), and 40 U.S.C. §§ 5104(e)(2)(D), 5104(e)(2)(G) under facial First Amendment challenges); *Gray,* 2023 U.S. Dist. 2023 LEXIS 70431, at *26-27 (denying motion to dismiss and holding Section 5104(e)(2)(G) is not unconstitutionally overbroad); *United States v. Gregg*, 226 F.3d 253, 267-68 (3d Cir. 2000) ("Activities that injure, threaten, or obstruct are not protected by the First Amendment, whether or not such conduct communicates a message."); *see generally United States v. Giampietro*, 475 F. Supp. 3d 779, 792 (M.D. Tenn. 2020) (rejecting First Amendment challenge to 18 U.S.C. § 1519; the statute "regulates conduct, not speech, and the conduct it regulates – destruction of documents with the intent to obstruct a federal investigation – is not expressive") (cleaned up); *Gregory v. City of Chicago*, 394 U.S. 111, 118, (1969) (Black, J., concurring) ("Plainly, however, no mandate in our Constitution leaves States and governmental units powerless to pass laws to protect the public from the kind of boisterous and threatening conduct that disturbs the tranquility of spots … for public and other buildings that require peace and quiet to carry out their functions, such as courts, libraries, schools, and hospitals.")

With respect to 18 U.S.C. § 1752(a)(1), Judge Cooper concluded in *Caputo* that the act of entering White House property *might* carry an expressive component. *See* 201 F. Supp. 3d at 71. So too here, Barron's act of unlawfully entering the Capitol's restricted area could be

"communicative in nature." *Id.* But even accepting that "th[is] charged conduct had some expressive aspect, it lost whatever First Amendment protection it may have had" when the crowd turned violent. *Nordean*, 579 F. Supp. 3d, at 41 (D.D.C. 2021); *see also Grayned v. City of Rockford*, 408 U.S. 104, 116 (1972) ("[W]here demonstrations turn violent, they lose their protected quality as expression under the First Amendment."); *United States v. Bingert*, 605 F. Supp. 3d 111, 130-131(D.D.C. May 25, 2022) (rejecting First Amendment challenge to Section 1752(a)(1) charge on this basis). Even if Barron did not engage in direct violence, she intentionally joined a mob that disrupted and violently interrupted the entire Congress. Her knowing trespass, in no way, transforms into protected speech.

Barron's more targeted attack on 40 U.S.C. § 5104(e)(2)(G), which prohibits knowingly and willfully demonstrating, parading, and picketing in a Capitol building, also fails. More than 20 years ago, Judge Friedman recognized that "the expression of ideas inside the Capitol may be regulated in order to permit Congress peaceably to carry out its lawmaking responsibilities and to permit citizens to bring their concerns to their legislators. There are rules that members of Congress must follow, as well as rules for their constituents." *Bynum v. United States Capitol Police Bd.*, 93 F. Supp. 2d 50, 55 (D.D.C. 2000). Barron offers no compelling reason to deviate from that sensible conclusion. A First Amendment challenge involves three steps. First, the speech or conduct at issue must be protected under the First Amendment. *Cornelius v. NAACP Legal Defense and Education Fund, Inc.*, 473 U.S. 788, 797 (1985). If so, the analysis then turns to the forum analysis described above. The third step "assess[es] whether the justification for exclusion from the relevant forum satisfies the requisite standard." *Cornelius*, 473 U.S. at 797.

Even if the Court were to consider facts outside of the Information, which the Court should not, Barron is wrong in her assertion that she should have unfettered access to the U.S. Capitol.

The defendant emphasizes the public nature of the Capitol as justification for her participation in the riot on January 6, 2021. ECF No. 43. In doing so, Barron appears to rely heavily, not on binding case law, but on facts outside the Information concerning the architecture of the Capitol building. *Id.* Barron provides as "the government's own," a pamphlet for the "Capitol Visitor Center," and argues that it was open on January 6, 2021. ECF No. 43 at 20-21. It was not.

In any event, Barron's apparent First Amendment claim—that the Capitol building should be considered a public forum—lacks merit. Barron cites no precedent in which a building comparable in form or function to the U.S. Capitol has been found to be a public forum. Barron's characterization of her unfettered right to enter the Capitol building does not undermine the government's "legitimate interest in ensuring that the activities of Congress proceed without disruption." *Bynum*, 93 F. Supp. 2d at 56. Moreover, the Court in *Bynum* explicitly concluded that 40 U.S.C. § 5104(e)(2)(G) is viewpoint neutral and a reasonable regulation of a nonpublic forum (i.e., the Capitol). Congress, in 40 U.S.C. § 5104(e)(2)(G) reasonably took aim at conduct that disrupts its orderly business, *Bynum*, 93 F. Supp. 2d at 58, and did so in a viewpoint neutral manner. At least two other courts in this district have concurred with the court's analysis in *Bynum* in the context of January 6 prosecutions. *See United States v. Nassif*, 628 F.Supp.3d 169 (D.D.C. September 12, 2022) (Bates, J.) (denying defendant's motion to dismiss 40 U.S.C. § 5104(e)(2)(G) count on First Amendment grounds); *United States v. Seitz*, 21-CR-279 (DLF), ECF No. 51 (Friedrich, J.) (same).

The same analysis applies to 18 U.S.C. §§ 1752(a)(1), 1752(a)(2), and 40 U.S.C. § 5104(e)(2)(D). First, 18 U.S.C. § 1752(a) prohibits certain *conduct* inside a restricted area—restricted given the presence of a United States Secret Service protectee—without lawful authority. For reasons like those discussed above and in *Bynum*, the government is within its rights to

14

maintain restricted areas as nonpublic fora. Perhaps most importantly, neither Section 1752(a)(1) nor Section 1752(a)(2) target speech: the former is a trespass prohibition, while the latter covers disorderly and disruptive conduct. Similarly, Section 5104(e)(2)(D) as charged here covers only disorderly and disruptive conduct in the nonpublic Capitol building.

Because the charged conduct here does not implicate protected First Amendment expression, Barron's challenge fails at the outset.

### ii. In the Alternative, Barron's Prosecution Under the Charged Statutes Comports With the First Amendment.

Even if some aspect of Barron's conduct constituted expressive First Amendment activity, the government's prosecution of her under the charged statutes nevertheless passes muster under *O'Brien*. *See, e.g., Johnson*, 491 U.S., at 403 (1989), *citing O'Brien*, 391 U.S., at 377 (1968).

First, the four violations of law charged here are "within the constitutional power of the government." *O'Brien*, 391 U.S. at 377. Barron does not (and cannot) contest the government's right to prohibit trespassing, disorderly conduct, or physical obstructions on its property.

Second, "when speech and nonspeech elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *O'Brien*, 391 U.S. at 376 (cleaned up). As Judge Kelly has noted, "[t]he Government has a weighty interest in protecting Congress's ability to function without 'corrupt' interference." *Nordean*, 579 F. Supp. 3d, at 42 (D.D.C. 2021); *see also Caputo*, 201 F. Supp. 3d, at 72 (noting "the Government's profound interest in protecting the White House complex, the President, and the functionality of the executive branch"). That interest reached its apex on January 6 when "Congress was convened in Joint Session to undertake one of its most solemn and constitutional duties." *Nordean*, 579 F. Supp. 3d, at 42 (D.D.C. 2021).

Third, that interest is "unrelated to the suppression of free expression." *O'Brien*, 391 U.S., at 377. None of four crimes that Barron is charged with turn on the content of her potentially expressive actions. Rather, the charged statutes ensure the protection and normal functioning of the Congress. *See Rhine*, --- F. Supp. 3d ---, 2023 U.S. Dist. LEXIS 12308, at *18-50 (D.D.C. January 2023); *Baez*, 2023 U.S. Dist. LEXIS 98766, at *9-22, *Gray,* 2023 U.S. Dist. 2023 LEXIS 70431, at *26-27.

Fourth, applying the charged statutes to Barron's conduct imposes no more than an "incidental limitation[] on First Amendment freedoms." *O'Brien*, 391 U.S., at 376. As explained above, the statutes charged in the Information predominately (if not exclusively) regulate unprotected activities. And the statutes "leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

### iii. The Defendant's Arguments to the Contrary are Unpersuasive.

In *Edwards v. South Carolina*, 372 U.S. 235 (1963), cited by the defendant as a basis for the Capitol Grounds as being a 'traditional venue' for the exercise of speech, the *Edwards* Court actually provides greater context than the defendant's narrowly-articulated proposition. The case also illustrates the juxtaposition of the *type* of speech protected by the First Amendment as outlined above.

In *Edwards*, the Supreme Court compared the *Edwards* case to *Feiner v. New York*, 340 U.S. 315 (1950) to determine whether the speech at issue is even protected by the First Amendment. In *Edwards*, during the civil rights movement, "the petitioners, in the same small groups, walked single file or two abreast in an orderly way through the grounds, each group carrying placards bearing such messages as 'I am proud to be a Negro' and 'Down with segregation.'" *Edwards*, at 231. The *Edwards* Court noted: "There was no obstruction of

pedestrian or vehicular traffic within the State House grounds. . . . Police protection at the scene was at all times sufficient to meet any foreseeable possibility of disorder." *Id*. at 231-32 (footnote omitted). The "187 in number, were convicted in a magistrate's court in Columbia, South Carolina, of the commonlaw crime of breach of the peace." *Id*. at 229-30.

As compared to *Feiner v. New York*, 340 U.S. 315 (1950):

> This . . . was a far cry from the situation in *Feiner* . . ., where two policemen were faced with a crowd which was 'pushing, shoving and milling around, where at least one member of the crowd 'threatened violence if the police did not act,' where 'the crowd was pressing closer around petitioner and the officer,' and where ' the speaker passes the bounds of argument or persuasion and undertakes incitement to riot.'

*Edwards*, 372 U.S. 235, 236 (1963) (internal citations omitted).

The "expressive conduct" of pushing pass a line of police officers protecting the elected representatives performing government business is not protected by the First Amendment. The conduct seen on January 6, 2021, is more akin to the conduct in *Feiner v. New York*, than the conduct seen in *Edwards v. South Carolina*.

Furthermore, as cited by the defendant, in the case of *Adderley v. State of Florida*, 385 U.S. 39 (1966), the Supreme Court *upheld* the convictions of individuals who were peacefully protesting the arrests of fellow students attempting to integrate theaters on the campus of Florida A&M. The dissent described the protesters' conduct as:

> There was no violence; no threat of violence; no attempted jail break; no storming of a prison; no plan or plot to do anything but protest. The evidence is uncontradicted that the petitioners' conduct did not upset the jailhouse routine; things went on as they normally would. None of the group entered the jail. Indeed, they moved back from the entrance as they were instructed. There was no shoving, no pushing, no disorder or threat of riot.

*Adderley v. State of Florida*, 385 U.S. 39, 51 (Douglas J. *dissenting*). Despite the fact that the activity in *Adderly* was far less intrusive and disturbing than in this case, the Supreme Court nonetheless affirmed the convictions because the challenged statute was *not* related to the suppression of the expression.

The defendant additionally focuses on a concurrence found in *CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1098 (9th Cir. 2015). However, her analysis ignores the ultimate holding – that the statute was unconstitutional as applied because CPR's conduct did not violate the statute in the first place. 779 F.3d at 1111.

In the present case, the defendant was undeterred by the obvious signs that she should not enter the restricted area. At the date and time prescribed by 3 U.S.C. § 15, the new Congress met to fulfill its obligation under the Twelfth Amendment to certify the 2020 Presidential Election. It was at that time the defendant chose to move past lines of bicycle racks, move past lines of police officers, move past her fellow rioters, and move past the doors to the Capitol and shout: "Fuck Nancy Pelosi and fuck Chuck Schumer. Got to drag those cocksuckers down!" *See* ECF 1, Statement of Facts.

Even if the defendant had unreasonably believed that her intent was to lawfully protest, no reasonable viewer of her conduct would have understood it that way. And the statutes at issue do not regulate her right to lawfully protest. Thus, the defendant's First Amendment challenge lacks merit and should be denied.

## IV. CONCLUSION

For these reasons, the government respectfully requests that the Court deny the Defendant's motion to dismiss.

                                                      Respectfully submitted,

                                                      Matthew M. Graves
                                                      United States Attorney
                                                      D.C. Bar No. 481052

By:     /s/ *Adam M. Dreher*
          Adam M. Dreher
          Assistant United States Attorney
          Michigan Bar No. P79246
          601 D. St. N.W.
          Washington, D.C. 20530
          (202) 252-1706
          adam.dreher@usdoj.gov

          VICTORIA A. SHEETS
          Assistant United States Attorney
          New York Bar No. 5548623
          victoria.sheets@usdoj.gov